Copy 217248

IN THE CIRCUIT COURT OF DAVIDSON COUNTY, TENNESSEE

FILED
2015 APR 22 PM 2: 23
RICHARD R ROOKER, CLERK
_____ D.C.

| | |
|---|---|
| CORY McNELEY, ) | |
| Plaintiff, ) | Civil Action No. |
| v. ) | |
| ) | JURY DEMAND |
| DOLLAR GENERAL CORPORATION; ) | 15C1549 |
| a/k/a DOLLAR GENERAL INC.; ) | |
| DOLGENCORP, LLC, a subsidiary of ) | |
| DOLLAR GENERAL CORPORATION, ) | |
| d/b/a DOLLAR GENERAL, ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW THE PLAINTIFF, CORY McNELEY (hereinafter "Plaintiff" or "McNeley"), and files this Complaint against the Defendant, DOLLAR GENERAL CORPORATION a/k/a DOLLAR GENERAL, INC. and DOLGENCORP, LLC, a subsidiary of DOLLAR GENERAL CORPORATION, d/b/a **DOLLAR GENERAL** (hereinafter referred to collectively as "Defendant" or "Dollar General"). Plaintiff states as follows:

### PARTIES

1. Plaintiff Corey McNeley is a citizen and resident of Warren County, Kentucky. Plaintiff is a former employee of Defendants who was employed in Davidson County Tennessee.

2. Dollar General, Inc. is a Tennessee Corporation. Its principal office is in Goodlettsville, Tennessee.

### JURISDICTION AND VENUE

3. This is an action for all available damages for Defendants violations of the Tennessee Public Protection Act, T.C.A. 50-1-304 and Tennessee Common Law (Public

1

EXHIBIT A



Policy/Retaliatory Discharge). The acts and omissions complained of in this lawsuit arose in Davidson County, Tennessee. Accordingly, personal jurisdiction, subject matter jurisdiction, and venue are appropriate in this Court.

## FACTS

### Plaintiff McNeley's Employment at Dollar General

4. Plaintiff McNeley became employed by Dollar General on August 4th, 2008 as a Director of Store Operations. His position was a management level position responsible for managing data for the company, investigating criminal wrongdoing, maintaining operations of various systems, litigation support and other duties.

5. As part of his employment duties, during August 2014, Plaintiff became aware that Dollar General was submitting fraudulent coupons at an increasing rate. Outside vendors generate coupons for customers to use at Dollar General stores. However, Dollar General does not always have the products in stock. Despite not actually having products in stock, Dollar General in turn submitted these coupons back to vendors.

6. Dollar General's registers allow the redemption of coupons for product that was not specifically purchased or in violation of contractual obligations via three methods:

    1. Register allows associate to override any matching technology and force the coupon to be accepted;
    2. The register only matches to family code during the redemption product. For example, a $10 product coupon can be applied to a $1.00 trial size of a similar product;
    3. The registers allow multiple coupons to be redeemed in the same transaction in violation of redemption terms.

7. The coupons were supposed to only be submitted when a consumer purchased the specific product, quantity and size stated on the coupon.

2



8. However, the coupons were being submitted to companies for reimbursement to Dollar General despite the fact that they were not for the correct product.

9. The terms and conditions of these coupon redemption agreements provide that it may be "Fraud" to present coupons for redemption other than as provided by the agreements.

10. During the middle of September 2014, Plaintiff became aware that Dollar General field associates and management were submitting as much or even more than $8,000,000 worth of fraudulent coupons back to vendors and getting improperly reimbursed for these coupons. This posed a risk to overstatement of revenue that potentially should be documented on publically filed statements to protect shareholder value.

11. Once Plaintiff became aware of this fraudulent and illegal conduct, he reported and complained to his boss and supervisor, David George, the Vice President of Loss Prevention. He specifically stated that widespread fraudulent transactions are being committed and endorsed by field employees in hundreds of various locations. Upon information and belief, Mr. George did nothing to investigate the fraudulent conduct reported by Plaintiff.

12. These issues were dismissed by David George because "it was in the companies benefit" and that further investigation into the parties committing these acts is not warranted

13. Pursuant to the terms and conditions in certain vendor agreements, submission of these coupons would be in violation of the terms and conditions of the contracts between the parties and could equate to mail fraud.

14. If these issues were caught by vendors, it could result in a lawsuit against Dollar General, criminal sanctions, and it is something that should be mentioned or documented in the SEC 10K as potential liability along with having a substantial effect on shareholder value.

Copy

15. Later, on or about September 26, 2014, Plaintiff uncovered evidence that David George had improperly run a background check Craig Matsumoto. Mr. Matsumoto is an industry expert in loss prevention and shrinkage issues.

16. As part of his job duties, Plaintiff was responsible for reviewing background checks run by Dollar General using their investigative reporting systems. In fact, Dollar General had recently settled a large class action based on allegations that the background checks were against the law and improper.

17. Plaintiff was aware that corporations are only supposed to run background checks for nine reasons, specifically related to fraud prevention services. If the background check was not done for one of these reasons, the background check could violate the Fair Credit Reporting Act and GLBA.

18. Plaintiff was concerned about the background check because he knew Mr. Matsumoto had no relationship with Dollar General and he was concerned about the FCRA violations of law. Plaintiff was aware that Dollar General had uncovered his date of birth, social security number and known assets.

19. Once Plaintiff became aware of the potential violations of law he confronted David George on or about October 23, 2014. Plaintiff told Mr. George the violation was against the law. Mr. George denied doing it. Plaintiff also informed his direct supervisor, Ken Pescheir, of this issue at that time and again, approximately one week later.

20. Soon after this meeting, on or about November 11, 2014, David George told Plaintiff that if he couldn't be trusted with secrets of this nature, referring to the background check, he would not have use for Plaintiff in this organization.

4

21. On November 5th Plaintiff was traveling with Mr. George visiting store in Cleveland Ohio. Plaintiff became concerned that Mr. George was violating company policy by having vendors accompany them while traveling. Vendor representatives with Transalarm traveled with Plaintiff to stores and were instructed to perform various maintenance within the stores even though they were not approved Dollar General Contractors.

22. Subsequent interactions with vendors at the direction of Mr. George revealed that vendors who had previous relations with Mr. George were receiving preferential treatment. This was addressed once prior on October 26th with concerns with I3 international and Checkview INC. The continual use of vendors outside of Dollar General policy concerned plaintiff and he addressed it once again on November 17th.

23. Plaintiff informed his direct supervisor, Ken Pescheir, about his concerns pertaining to the use of unauthorized vendors in direct conflict of internal policies.

## Mr. McNeley's Unlawful Termination

24. Soon after confronting David George about these illegal acts, Plaintiff was scheduled to testify for Dollar General during a trial. Mr. George told him that he didn't need to worry about testifying and he needed to meet with him.

25. On November 20, 2014, Plaintiff testified in Court in Kentucky on behalf of Dollar General.

26. On November 21, 2014, Plaintiff was back in the Tennessee office and scheduled to meet with David George about potential price fixing allegations with suppliers and the physical security manager.

5

Copy

27. Instead of having this meeting, Plaintiff was confronted by two Human Resource employees who informed Plaintiff they were conducting an internal investigation into some allegations against Plaintiff.

28. Plaintiff was confronted about allegations that he had submitted expense reports for a conference he didn't even attend. Plaintiff provided vendors and names of he had met with at the conference. Plaintiff confronted every allegation head on and explained any issues with any expense reports.

29. Then, the HR employees questioned him about an alleged relationship with a co-employee,. Plaintiff explained that he was friends with all of his co-employees and did not have any type of inappropriate relationship as defined by Dollar General.

30. The HR employees presented Plaintiff with e-mails between himself and a co-employee from as far back as August 20, 2014, which were about Plaintiff asking the co-employee how it went moving her daughter into college.

31. Due to an overabundance of caution, Plaintiff had previously disclosed what could have been considered inappropriate conduct with a co-employee, but was not actually inappropriate. He disclosed this information on June 11, 2014 to his direct supervisor Ken Pescheir and subsequently disclosed it to Robyn Federick in Human Resources. There was nothing considered improper about the relationship at the time and the matter was closed. No action was taken on this until after made his complaints about alleged illegal conduct by Dollar General. Additionally in the middle of September Plaintiff disclosed relationship and nature of the relationship to David George and he was no issued any discipline at that time.

6

32. At this point, Plaintiff was told his services were no longer needed and he was terminated. They asked him for his ID, company cell phone and credit card. He was not allowed to clean out his desk and only had a portion of his personal belongings returned.

33. Defendant Dollar General's proffered reasons for Plaintiff's termination are merely pretexts for the retaliation taken against them. The proffered reasons have no basis in fact or belief.

34. Defendant's motivation in discharging Plaintiff was because of his complaints of illegal conduct taken by Dollar General.

35. The termination caused Plaintiff anxiety, emotional distress, worry, financial distress, and hardship.

36. Plaintiff seeks his lost wages (back pay and/or front pay), reinstatement, compensation for emotional distress and, because the actions were intentional or reckless deprivation of his rights under Tennessee common law, and punitive damages.

## CAUSES OF ACTION

### VIOLATION OF TENNESSEE PUBLIC PROTECTION ACT
### Tenn. Code Ann. § 50-6-114.

37. Plaintiff McNeley restates and incorporates herein the foregoing paragraphs.

38. Based on the conduct described in this Complaint, Defendants are liable for violations of the TPPA. The above actions described constitute retaliation in violation of the TPPA for Plaintiff's refusal to remain silent about or participate in illegal activity regarding the abuse of an adult resident, informing State of Tennessee agents about the abuse, and other actions warranting protection as a matter of public policy.

39. Defendants conduct harmed and caused damage to Plaintiff.

### VIOLATION OF TENNESSEE COMMON LAW

Case 3:15-cv-00503   Document 1-1   Filed 04/29/15   Page 7 of 10 PageID #: 11



### (PUBLIC POLICY/RETALIATORY DISCHARGE)

40. Plaintiff McNeley restates and incorporates the foregoing paragraphs.

41. Based on the conduct described in this Complaint, Defendants are liable for violations of Tennessee Common law for unlawful termination of Plaintiff McNeley on public policy and unlawful retaliatory discharge grounds.

42. Defendants conduct harmed and caused damage to Plaintiff McNeley.

### DAMAGES AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant:

1. That a trial by jury be had on all triable issues;
2. Judgment in favor of Plaintiff and against Defendants on all Counts in this action;
3. Declaratory judgment that the practices complained of are unlawful and void;
4. Back pay and lost benefits to Plaintiff, including lost stock and stock options;
5. Front pay (future lost pay and benefits);
6. Compensatory damages;
7. Substantial Punitive damages;
8. Attorneys' fees and expenses;
9. Prejudgment interest and, if applicable, post-judgment interest; and
10. Such other and further legal or equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

Joshua D. Wilson
Attorney for Plaintiffs
(615) 964-5215

8

Copy

WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLFARB, LLC
5214 Maryland Way
Suite 402
Brentwood, TN 37027

9

SERVE DEFENDANT DOLLAR GENERAL AT THE FOLLOWING ADDRESS

DOLLAR GENERAL

Registered Agent

Corporation Service Company

2908 Poston Ave.

Nashville, TN 37203-1312